- 1 -

BEFORE THE UNITED STATES JUDICIAL PANEL ON
MULTI-DISTRICT LITIGATION

| | |
|---|---|
| In re<br><br>BIG PICTURE LOANS LITIGATION | MDL No. |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE EASTERN DISTRICT OF VIRGINIA AND FOR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407**

## **INTRODUCTION**

Pursuant to 28 U.S.C. § 1407 and the Rules of Procedure of the Judicial Panel on Multidistrict Litigation, Plaintiffs in three class action cases in the Eastern District of Virginia respectfully move the Judicial Panel on Multidistrict Litigation for an order transferring the eight pending related cases listed in the Schedule of Actions, as well as any subsequently filed tag-along cases involving similar facts and claims, to the Eastern District of Virginia for coordinated or consolidated proceedings. The cases in the Eastern District of Virginia are far more advanced than the cases filed in other courts around the country. Transfer will preserve the parties' and the courts' resources and will ensure consistent outcomes across cases.

This litigation involves Defendants' scheme to make online usurious short term loans (commonly called "payday loans"). These loans carry triple-digit interest rates, often exceeding 400%, and are illegal. Payday loans target vulnerable borrowers and, left unregulated, can economically devastate borrowers and their communities. Consumers often renew the loans or take out new loans when they are unable to pay their original loans off, creating a cycle of mounting debt. Some payday lenders have devised a method to avoid state usury laws—the "rent-a-tribe" scheme. In a rent-a-tribe scheme, the payday lender—which does most of its lending over the internet—affiliates with a Native American tribe to attempt to insulate itself from federal and state law by piggy-backing on the tribe's sovereign legal status and its general immunity from suit under federal and state laws. Lenders argue that because their businesses are located on a Native American reservation or affiliated with a Native American tribe, they are bound by the laws of that reservation or tribe only and not by federal or state law.

The rent-a-tribe enterprise at issue in this litigation was created and operated by defendant Matt Martorello, a Chicago entrepreneur with no lineage to the Lac Vieux Desert

Bank of Lake Superior Chippewa Indians ("LVD"). Over the past seven years, the enterprise made high-interest loans to consumers through Red Rock Tribal Lending, LLC, and Big Picture Loans, LLC, two companies claiming to be owned and operated by the LVD. In reality, these two entities were formed to ostensibly provide sovereign immunity to Martorello from the consequences of making usurious loans and collecting unlawful debt. Plaintiffs contend that Martorello reaped the vast majority of the profits from the loans and maintained control of the day to day lending operations.

On June 22, 2017, Plaintiffs Lula Williams, Gloria Turnage, George Hengle, Dowin Coffy, and Felix Gillison, Jr. (the *Williams* Plaintiffs) filed a class action complaint in the Eastern District of Virginia on behalf of all persons who received a loan with an interest rate greater than 12% from Red Rock or Big Picture Loans when residing or located in Virginia. The *Williams* Plaintiffs allege that the defendants—Martorello, Big Picture, and Ascension Technologies, LLC—violate Virginia's usury laws and the Racketeer Influenced and Corrupt Organizations Act (RICO) in making the extortionate loans to proposed class members.

On June 12, 2018, Plaintiffs Renee Galloway, Dianne Turner, Earl Browne, Rose Marie Buchert, Regina Nolte, Teresa Titus and Kevin Minor (the *Galloway* Plaintiffs) filed a class action complaint in the Eastern District of Virginia on behalf of all persons living in Virginia, California, Illinois, Indiana, Ohio, Washington, and states with similar usury laws who received a loan with an interest rate greater than 12% from Red Rock or Big Picture Loans. The *Galloway* Plaintiffs allege that defendants Martorello, Big Picture Loans, and Ascension violate RICO and state usury laws by making the high-interest loans. The *Williams* and *Galloway* Plaintiffs also filed a new case in the Eastern District of Virginia naming as defendants several additional

persons and entities who were involved in and profited from the lending scheme, as well as plaintiffs from additional states.

This litigation has been hard fought from the start. The Defendants are pursuing every procedural and legal challenge available, and third parties are disputing the scope of Plaintiffs' subpoenas in courts around the country, spawning additional litigation. There are over *five hundred* docket entries in the *Williams* matter alone, and the court has issued over *one hundred rulings* on virtually every issue imaginable, from sovereign immunity to motions to dismiss to privilege waivers to countless discovery disputes. More than *25 depositions* have been taken, class certification is fully briefed. The Fourth Circuit recently heard argument on the corporate defendants' appeal of the denial of their motion to dismiss on sovereign immunity grounds.[1] The court has fielded approximately *thirty* contested discovery motions. During a recent hearing, the court called Defendants' discovery tactics "Sherman-esque" and observed that discovery obstruction had "reached enormous proportions" unlike any he had seen since he has been on the bench. *See* Transcript at 6, 26, *Galloway v. Big Picture Loans, LLC*, No. 3:18-cv-406 (E.D. Va. May 22, 2019), ECF No. 242. The court has entered an additional *forty orders* in *Galloway* and recently entered an order allowing Plaintiffs to supplement the record on sovereign immunity and to describe in detail any misrepresentations Defendants have made to the court. *See Galloway*, ECF No. 246 at 6-8.

Starting nearly a year after the *Williams* Plaintiffs filed their class action complaint, five additional cases with effectively identical copycat allegations were filed in five different

---

[1] The corporate defendants are not necessary parties to this litigation because Plaintiffs argue that Matt Martorello and related entities and individuals conspired to evade state and federal law by unlawfully piggy-backing on purported tribal sovereign immunity. Thus, even if the Fourth Circuit holds the corporate defendants have tribal sovereign immunity, the litigation would still proceed against Martorello and related non-tribal individuals and entities.

districts: Northern District of California (*Cumming*), Northern District of Georgia (*McKoy*), District of Oregon (*Smith*), District of Massachusetts (*Duggan*), and Central District of California (*Kobin*). *See* Schedule of Actions. All of the cases assert state usury law and RICO violations against similar groups of defendants and were filed on behalf of proposed classes of state residents. The *Cumming* and *Kobin* cases were also filed on behalf of proposed nationwide classes. Not surprisingly, the defendants have pursued the same early tactics in these cases as in *Williams* and *Galloway*, filing motions to dismiss on various grounds including sovereign immunity. The plaintiffs in the copycat cases have responded by seeking the discovery the *Williams* Plaintiffs obtained before responding to the motions. To be clear: these plaintiffs have literally requested the discovery from *Williams*, including "pleadings and evidence" referred to in jurisdictional motion briefing and "unredacted versions" of evidence that the Eastern District of Virginia considered when ruling on motions. The plaintiffs in these copycat cases are represented by five different law firms: Tycko & Zaveeri LLP, McRae Bertschi & Cole LLC, Stoll Berne Lokting & Schlachter P.C., Bailey & Glasser LLP, and Caddell & Chapman.

Because all eight cases involve the same legal claims and defendants, overlapping classes, and common issues of law and fact, consolidation will promote the convenience of the parties and witnesses and the just and efficient conduct of the litigation. *See* 28 U.S.C. § 1407. Consolidation will mitigate the possibility of inconsistent rulings, including rulings on the propriety of class certification, and will promote judicial economy by providing a single forum to which future tag-along actions can be transferred. The Eastern District of Virginia is the most appropriate forum for these cases to proceed. The *Williams* and *Galloway* Plaintiffs therefore respectfully move the Panel for transfer and consolidation of the eight cases to the Eastern District of Virginia. On June 5, 2019, Plaintiffs asked Defendants to provide their opinion

regarding transfer and consolidation. On June 7, 2019, Defendants informed Plaintiffs they were still consulting their clients and had not stated their position.

## ARGUMENT

**I. The litigation satisfies the requirements for consolidation and transfer under 28 U.S.C. § 1407(a).**

Transfer and consolidation is permitted if civil actions pending in different districts "involv[e] one or more common questions of fact" and the Panel determines that transfer will further "the convenience of parties and witnesses and will promote the just and efficient conduct of such actions." 28 U.S.C. § 1407(a). "The objective of transfer is to eliminate duplication in discovery, avoid conflicting rulings and schedules, reduce litigation cost, and save the time and effort of the parties, the attorneys, the witnesses, and the courts." Manual for Complex Litigation § 20.131 (4th ed. May 2019 update). Transfer and consolidation of the eight pending cases for pretrial proceedings will achieve these objectives.

**A. The litigation involves common questions of fact.**

To assess whether transfer and consolidation is appropriate under section 1407, the Panel considers the pleadings to determine the extent to which the cases involve common questions of fact. The complaints in the eight pending cases assert nearly identical factual allegations relating to the rent-a-tribe enterprise masterminded by Martorello. The complaints also assert the same legal claims—violations of RICO and state usury laws—against the same defendants. Many of the key factual allegations in the *Williams* Plaintiffs' complaint are repeated nearly verbatim in the copycat complaints filed in other jurisdictions. *Compare* Class Action Complaint ¶¶ 13-15, 26-53, *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461-REP (E.D. Va. June 22, 2017), ECF No. 1 *with* Amended Class Action Complaint ¶¶ 16-42, *Cumming v. Big Picture Loans, LLC*, No. 5:18-cv-03476-EJD (N.D. Cal. June 26, 2018) ECF No. 6; Class Action Complaint ¶¶ 62-75,

*McKoy v. Big Picture Loans, LLC*, No. 1:18-cv-03217-MLB (N.D. Ga. July 3, 2018), ECF No. 1; Class Action Allegation Complaint ¶¶ 33-46, *Smith v. Big Picture Loans, LLC*, No. 3:18-cv-01651-AC (D. Or. Sept. 11, 2018), ECF No. 1; Class Action Complaint ¶¶ 44-57, *Duggan v. Big Picture Loans, LLC*, No. 18-cv-12277-JGC (D. Mass. Oct. 31, 2018), ECF No. 1; Class Action Complaint ¶¶ 38-50, *Kobin v. Big Picture Loans, LLC*, No. 2:19-cv-02842-CJC-E (C.D. Cal. Apr. 12, 2019), ECF No. 1.

Importantly, the Defendants' payday lending scheme did not vary from state to state. The rates charged in all states were over the state usury limits, and Defendants' defense in all cases is that state law does not apply to them because they are entitled to tribal immunity. The issues related to tribal immunity are factually intricate and legally complex.

### B. The parties face duplicative discovery absent transfer and consolidation.

Resolution of the common issues in a single forum would further the convenience of all parties and witnesses, as well as the courts. *See* 28 U.S.C. § 1407(a). Because all eight cases assert virtually identical allegations and raise common factual questions, the plaintiffs in each case will require depositions of the same persons and entities and discovery of the same documents. In fact, the plaintiffs in several of the cases have already sought discovery the *Williams* Plaintiffs obtained to respond to the defendants' similar motions to dismiss on jurisdictional grounds. *See*, *e.g*., Plaintiffs' Motion for Jurisdictional Discovery, *McKoy v. Big Picture Loans, LLC*, No. 1:18-cv-03217-MLB (N.D. Ga. July 3, 2018), ECF No. 51 (requesting production of "all pleadings and evidence that were filed as attachments or referred to in briefing on jurisdictional motions in the *Williams* case"); Plaintiff's Motion for Jurisdictional Discovery and Briefing Schedule at 4, *Smith v. Big Picture Loans, LLC*, No. 3:18-cv-01651-AC (D. Or. Jan. 11, 2019), ECF No. 62 ("Plaintiff served jurisdictional discovery on Defendants, seeking documents relevant to factors courts have considered relevant to sovereign immunity, including

unredacted versions of the evidence that the Eastern District of Virginia considered."). Defendants have objected to these requests, leading to motion practice.

It is inefficient for different judges across the country to try to decide which discovery completed in *Williams* should be made available to the plaintiffs in other cases. Doing so will require those judges to become familiar with the record in *Williams*, which is voluminous and constantly developing as the court continues to rule on discovery motions, including disputes over third party subpoenas transferred from other districts and ongoing privilege disputes. *See, e.g.,* Memorandum Order, *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461-REP (E.D. Va. May 28, 2019), ECF No. 513 (ordering Rosette LLP, a law firm that represented Ascension and Big Picture Loans, to produce unredacted versions of documents or submit proposed redactions in camera for review); Memorandum Opinion, ECF No. 478 (granting in part plaintiffs' motion to compel information withheld on the basis of attorney-client privilege). One court considering a motion to transfer a subpoena-related action characterized its efforts to "gain an understanding of the more nuanced facts as well as the progress of" the *Williams* action as a struggle, noting that at that time the docket "comprises 463 docket entries." Order at 10, *Weddle v. Williams*, No. 18-mc-00225-RBJ-KLM at 10 (D. Colo. Apr. 15, 2019), ECF No. 27.

Given Defendants' obstructionist approach to discovery, it is also not possible to rely on the parties in the various cases to coordinate and cooperate during discovery. For example, Plaintiffs understand that the parties in the *Duggan* and *Smith* cases have entered into an agreement where defendants' "document production, deposition testimony, and responses to written discovery in *Smith*" may be used in *Duggan*. *Duggan*, ECF No. 61 at 2. But the discovery ordered in *Smith* is far more limited than the discovery Plaintiffs have now taken in *Williams* and that the Eastern District of Virginia has permitted Plaintiffs to use to support their

position on sovereign immunity. For example, in *Smith*, the tribal defendants have only made two tribal witnesses—Chairman James William Jr. and Michelle Hazen—available for depositions and there is no indication in the Stipulation that the plaintiffs will be able to depose Martorello or any of the other key non-party witnesses that participated in this scheme. *See id.* at 2-3. The *Williams* Plaintiffs, by contrast, have taken 25 depositions, including Martorello and numerous other participants in the scheme. These depositions have generated critical information supporting Plaintiffs' position on sovereign immunity issues.

It also appears that the written discovery in *Smith* and *Duggan* will be limited to discovery conducted in connection with defendants' original sovereign immunity motion in *Williams*. But as the *Williams* court noted in its recent order permitting supplementation of the record, the new evidence the *Williams* Plaintiffs developed since sovereign immunity was originally briefed "raises substantive doubts about the accuracy of evidence presented in [*Galloway*] and the *Williams* Case by [Ascension and Big Picture] and Martorello about: (1) the genesis of the tribal lending arrangements; (2) the creation and structure of [Ascension and Big Picture], including the sale and merger transactions that were involved in the corporate restructuring; (3) the role of Rosette, LLP and its leader, Rob Rosette, in the sale and merger transactions involved in the corporate restructure; and (4) the value (or lack of value) of the key asset (Bellicose Capital, LLC) involved in the corporate restructuring." *Galloway*, ECF No. 246 at 3. The court concludes that the *Galloway* Plaintiffs should be permitted to file a new brief on sovereign immunity because "there is significant new and important evidence that will be critical to deciding whether Big Picture and Ascension enjoy sovereign immunity." *Id.*

Put plainly, Defendants appear to be continuing their obstructionist ways in *Smith* and *Duggan*, hoping to limit jurisdictional discovery in those actions to the limited record that

existed when sovereign immunity was first briefed in *Williams*. Transfer and consolidation will ensure that all the actions are supervised by a single judge familiar with the full factual record as well as Defendants' attempts to restrict discovery. Because the District Court for the Eastern District of Virginia is familiar "from day-to-day contact with all aspects of the litigation," it is "in the best position to design a pretrial program that will prevent duplicative discovery, eliminate the possibility of conflicting rulings and substantially conserve the time and efforts of the parties, the witnesses and the federal judiciary." *In re Resource Exploration Inc. Sec. Litig.*, 483 F. Supp. 817, 821 (J.P.M.L. 1980). Absent consolidation and transfer, courts may enter decisions on sovereign immunity and other important issues without the benefit of the full record that the *Williams* Plaintiffs have developed.

Without consolidation, courts in all the related matters will have to constantly monitor the *Williams* and *Galloway* dockets and revisit their rulings each time the court in the Eastern District of Virginia decides a discovery issue in the *Williams* case. Consolidation will mitigate these problems by allowing a single judge to manage discovery and the parties to coordinate their efforts. This will reduce litigation costs and minimize inconvenience to the parties and witnesses, to the benefit of litigants, third parties, and the courts. *See In re Enfamil Lipil Mktg. and Sales Practices Litig.*, 764 F. Supp. 2d 1356, 1357 (J.P.M.L. 2011) ("centralization under Section 1407 allows us to assign these six actions, each of which contain statewide or nationwide class allegations, to a single judge who can ensure that pretrial proceedings are conducted in a streamlined manner leading to the just and expeditious resolution of all actions to the overall benefit of all parties and the courts").

**C.     Transfer and consolidation will prevent inconsistent pretrial rulings.**

Because the cases involve the same factual allegations, the same types of claims, and the

same defendants, there is a significant risk of inconsistent pretrial rulings. The Panel considers the possibility of inconsistent rulings on pretrial issues because of the possible res judicata or collateral estoppel effect on other cases. *See In re Enron Corp. Sec., Derivative & ERISA Litig.*, 196 F. Supp. 2d 1375, 1376 (J.P.M.L. 2002) (granting a transfer in part to prevent inconsistent pretrial rulings, particularly with respect to questions of class certification). The defendants have already filed motions to dismiss in several of the cases filed after *Williams* that seek dismissal on the same grounds. The defendants are also likely to file similar summary judgment motions in the cases.

Transfer and consolidation is particularly appropriate for these eight actions to prevent inconsistent rulings on class certification and other class-related issues. *See In re LLRice 601 Contamination Litig.*, 466 F. Supp. 2d 1351, 1352 (J.P.M.L. 2006) ("Centralization … is necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings (especially with respect to questions of class certification), and conserve the resources of the parties, their counsel and the judiciary."). All of the cases assert RICO violations in addition to state usury law claims, so each court will have to address the propriety of certification of the same issues and claims. This Panel has "consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." *In re Sugar Indus. Antitrust Litig.*, 395 F. Supp. 1271, 1273 (J.P.M.L. 1975); *accord In re Resource Exploration*, 483 F. Supp. at 821 ("It is desirable to have a single judge oversee the class action issues in these actions to avoid duplicative efforts and inconsistent rulings in this area.").

By eliminating the risk of duplicative discovery, and the corresponding risk of repetitive and inconsistent pretrial rulings, consolidation will promote the just and efficient resolution of

these actions. It will permit discovery to be effectively and efficiently managed while conserving the resources of the parties, attorneys, and judicial system.

### D. There is a sufficient number of actions to support transfer and consolidation.

Finally, the eight pending cases and any tag-along cases that are filed are sufficiently numerous and complex to warrant consolidation. The Panel has routinely ordered centralization of five or fewer cases. *See, e.g., In re Gold King Mind Release in San Juan County, Colorado, on August 5, 2015*, 291 F. Supp. 1373, 1374 (J.P.M.L. 2018) (ordering centralization of four cases rather than informal coordination and cooperation because of "the apparent complexity of the factual issues, as well as the potential for significant tag-along activity"); *In re Dealer Mgmt. Sys. Antitrust Litig.*, 291 F. Supp. 3d 1367, 1368-69 (J.P.M.L. 2018) (centralizing five actions); *In re Epipen Mktg., Sales Practices & Antitrust Litig.*, 268 F. Supp. 3d 1356, 1359-60 (J.P.M.L. 2017) (centralizing five actions and commending plaintiffs' willingness to work cooperatively but finding that coordination "appears problematic" because of "the likely complexity of the factual questions" and a "lack of agreement among counsel").

## II. The Eastern District of Virginia is the appropriate transferee forum.

Plaintiffs respectfully suggest that the Eastern District of Virginia is the superior forum for the consolidated action. In choosing an appropriate forum, the Panel considers where the largest number of cases is pending; where discovery has occurred; where cases have progressed furthest; the site of the occurrence of the common facts; where the cost and inconvenience will be minimized; and the experience, skill, and caseloads of available judges. Manual for Complex Litigation § 20.132. These criteria point to the Eastern District of Virginia as the most appropriate forum for the transfer and consolidation.

The first three considerations strongly support transfer to the Eastern District of Virginia. There are three cases pending in the District and, so far, eight subpoena-related actions have been transferred pursuant to Federal Rule Civil Procedure 45(f). The *Williams* matter, which has been on file since June 2017, currently has 538 docket entries and the *Galloway* matter has 248 docket entries. The *Williams* court ruled on the defendants' motions to dismiss nearly a year ago. The corporate defendants appealed the district court's denial of their motion to dismiss on sovereign immunity grounds and the Fourth Circuit heard oral argument on May 7, 2019. In the meantime, Plaintiffs and defendant Martorello engaged in voluminous discovery that has been hotly contested, requiring the district court to resolve approximately thirty contested discovery motions. *See Williams*, ECF Nos. 16, 45, 49, 111, 116, 310, 312, 320, 321, 324, 326, 327, 328, 329, 349, 358, 361, 415, 416, 435, 440, 441, 460, 461, 462, 478, 479, 502, 511, 513. Recently, the district court issued a lengthy opinion on the Plaintiffs' motion to compel information Martorello withheld on the basis of attorney-client privilege, finding among other things that "the plaintiffs have made a prima facie case that Martorello violated RICO." Memorandum Opinion at 37, *Williams v. Big Picture Loans, LLC*, No. 3:17-cv-461-REP (E.D. Va. May 3, 2019), ECF No. 478. Twenty depositions of fact witnesses have been taken, including all the named plaintiffs. Martorello and the *Williams* Plaintiffs have exchanged expert reports and conducted expert depositions, including the deposition of Plaintiffs' expert and five of Martorello's seven experts. The *Williams* Plaintiffs filed a motion for class certification of their claims against Martorello in September 2018 and the motion is now fully briefed. The *Williams* Plaintiffs have also served subpoenas on approximately 55 third parties, including the subpoenas that resulted in disputes transferred to the Eastern District of Virginia pursuant to Rule 45(f). The *Galloway* Plaintiffs also have served subpoenas, including 37 on state attorneys general.

None of the other cases has proceeded beyond the pleading stage. The docket in *Cumming* totals 106 entries and the court has entered 23 orders, the majority of which are administrative in nature. The *Cumming* court is scheduled to hear argument on the defendants' motions to dismiss on July 18, 2019 and the parties are still discussing the scope of jurisdictional discovery. *See Cumming*, ECF No. 104 (joint letter brief regarding discovery). *McKoy*, *Smith*, and *Duggan* have 60, 78, and 62 docket entries respectively. The defendants have moved to dismiss, and the parties are in the early stages of conducting jurisdictional discovery. The defendants have not yet appeared in *Kobin*.

*Galloway*, which is also pending in the Eastern District of Virginia and currently has 248 docket entries, is further along. Judge Payne heard oral argument on the defendants' motions to dismiss on May 22, 2019 and entered an order permitting the *Galloway* Plaintiffs to file a new brief on sovereign immunity issues that incorporates all the discovery that the *Williams* Plaintiffs developed over the last year. As noted above, however, similar coordination does not appear to be possible with the other cases where defendants have resisted the plaintiffs' attempts to obtain discovery acquired in *Williams* or have been able to limit discovery to the incomplete factual record before the court on the *Williams* sovereign immunity decision. *See, e.g., Cumming*, ECF No. 97 (refusing to produce information produced in the Williams matter on various grounds).

There is no single "site of the occurrence of the common facts." Martorello's enterprise made loans online to consumers throughout the country. The call center that handled consumer complaints is located in the Philippines and the entities and individuals comprising the enterprise are dispersed throughout the United States, Puerto Rico, and the Virgin Islands. The Eastern District of Virginia is convenient because it is served by two international airports and dozens of reputable hotels. *See In re Groupon Mktg. & Sales Practices Litig.*, 787 F. Supp. 2d 1362, 1364

(J.P.M.L. 2011) (selecting court where the first-filed action was pending for transfer of nationwide litigation in part "because it … is located in an accessible metropolitan area"); *In re Pamidronate Products Liability Litig.*, 657 F. Supp. 2d 1368, 1369 (J.P.M.L. 2009) (same). And the docket in the Eastern District of Virginia is among the least burdened by multidistrict litigation with only three cases pending. *See* MDL Statistics Report—Distribution of Pending MDL Dockets by District (May 15, 2019), *available at* https://www.jpml.uscourts.gov/sites/jpml/files/Pending_MDL_Dockets_By_District-May-15-2019.pdf.

The relevant considerations support transfer to the Eastern District of Virginia for consolidation. The first-filed *Williams* case is pending before the Honorable Robert E. Payne, an experienced judge who is familiar with the factual and legal issues in this litigation and is not currently presiding over another multidistrict litigation docket. *See In re Enfamil*, 764 F. Supp. 2d at 1357 (transferring cases to the judge who was familiar with the merits of the litigation and had ruled on numerous substantive matters).

## CONCLUSION

The *Williams* and *Galloway* Plaintiffs respectfully request that the Panel grant their motion and order transfer of the actions listed in the Schedule of Actions, as well as any tag-along actions, to the Eastern District of Virginia for consolidated pretrial proceedings.

RESPECTFULLY SUBMITTED AND DATED this 7th day of June, 2019.

BERGER MONTAGUE PC

By: /s/ E. Michelle Drake
    E. Michelle Drake
    Email: emdrake@bm.net
    John G. Albanese
    Email: jalbanese@bm.net

43 SE Main Street, Suite 505
Minneapolis, Minnesota 55414
Telephone: (612) 594-5999
Facsimile: (612) 584-4470

Leonard A. Bennett
Email: lenbennett@clalegal.com
Elizabeth W. Hanes
Email: elizabeth@clalegal.com
Craig C. Marchiando
Email: craig@clalegal.com
CONSUMER LITIGATION
  ASSOCIATES, P.C
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
Telephone: (757) 930-3660
Facsimile: (757) 930-3662

Kristi C. Kelly
Email: kkelly@kellyguzzo.com
Andrew J. Guzzo
Email: aguzzo@kellyguzzo.com
Casey S. Nash
Email: casey@kellyguzzo.com
KELLY GUZZO, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, Virginia 22030
Telephone: (703) 424-7572
Facsimile: (703) 591-0167

Beth E. Terrell
Email: bterrell@terrellmarshall.com
Jennifer Rust Murray
Email:  jmurray@terrellmarshall.com
Elizabeth A. Adams
Email: eadams@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103
Telephone: (206) 816-6603
Facsimile: (206) 319-5450

        Matthew Wessler
        Email: matt@guptawessler.com
        GUPTA WESSLER PLLC
        1735 20th Street, NW
        Washington, DC 20009
        Telephone: (202) 888-1741
        Facsimile: (202) 888-7792

*Attorneys for Plaintiffs Lula Williams, Gloria Turnage, George Hengle, Dowin Coffy, Felix Gillison, Jr., Renee Galloway, Dianne Turner, Earl Browne, Rose Marie Buchert, Regina Nolte, Teresa Titus, Kevin Minor, Dominique de la Bay, Lori Fitzgerald, Andrea Scarborough, Burry Pough, Lisa Martinez, Sonji Grandy, Anastasia Sherman, Jerry Avent, Lucinda Gray, Anthony Green, Linda Madison, Derek Geter, Keisha Hamm, Faith Thomas, Sharon Paavo, and Latanya Tarleton*