# BEFORE THE UNITED STATES JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

IN RE:                       )
                                )     **MDL No. 2906**

**BIG PICTURE LOANS, LLC LITIGATION**    )
_____ )

## TRIBAL DEFENDANTS' JOINT OPPOSITION TO PLAINTIFFS' MOTION FOR TRANSFER OF ACTIONS TO THE EASTERN DISTRICT OF VIRGINIA AND FOR CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407[1]

David N. Anthony
Virginia State Bar No. 31696
Timothy J. St. George
Virginia State Bar No. 77349
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: david.anthony@troutman.com
Email: timothy.st.george@troutman.com

Justin A. Gray
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: jgray@rosettelaw.com

---

[1] Big Picture Loans, LLC and Ascension Technologies, LLC are immune arms of the Lac Vieux Desert Band of Lake Superior Chippewa Indians, thus no court has jurisdiction over them. *See Williams v. Big Picture Loans, LLC*, No. 18-1827, 2019 U.S. App. LEXIS 19957 (4th Cir. July 3, 2019). A defendant does not submit to the jurisdiction of a court by challenging jurisdiction, including by filing a motion to dismiss. *See, e.g., Hunt v. Calhoun County Bank, Inc.*, 8 F. Supp. 3d 720, 726 (E.D. Va. 2014); *see also Tomai–Minogue v. State Farm Mut. Auto. Ins. Co.*, 770 F.2d 1228, 1233 (4th Cir.1985) (recognizing that a defendant may enter a special appearance to challenge personal jurisdiction). Further, a sovereign's limited appearance in legal proceedings for the purpose of seeking dismissal for lack of jurisdiction does not waive any claims to sovereign immunity. *See e.g., Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*, 327 F. Supp.2d 995, 1000 (W.D. Wis. 2004) ("[Sovereign] entities may intervene for a limited purpose such as moving to dismiss the lawsuit for failure to join an indispensable party without waiving their sovereign immunity."); *McClendon v. U.S.*, 885 F.2d 627, 630 (9th Cir.1989) ("[T]erms of [a sovereign's] consent to be sued in any court define that court's jurisdiction to entertain the suit.'") (quoting *Jicarilla Apache Tribe v. Hodel*, 821 F.2d 537, 539 (10th Cir.1987) (quoting *U.S. v. Testan*, 424 U.S. 392, 399 (1976)). Big Picture Loans, LLC and Ascension Technologies, LLC file this joint opposition under protest and do not consent to jurisdiction or waive their immunity.

**TABLE OF CONTENTS**

RELEVANT BACKGROUND ........................................................................................ 3

I.     VIRGINIA CASES ...................................................................................... 3

     A.   *WILLIAMS* ........................................................................................ 3

     B.   *GALLOWAY* ..................................................................................... 6

     C.   *GALLOWAY II* & *GALLOWAY III* .................................................. 7

II.    NON-VIRGINIA CASES ............................................................................ 7

     A.   *CUMMING* ........................................................................................ 7

     B.   *SMITH*, *MCKOY*, *DUGGAN*, AND *KOBIN*....................................... 8

LEGAL STANDARD................................................................................................. 10

ARGUMENT ........................................................................................................... 10

I.     TRIBAL SOVEREIGN IMMUNITY AND THE PENDENCY OF RELATED
     JURISDICTIONAL MOTIONS PRECLUDES THE TRANSFER OF THE
     IDENTIFIED CASES UNDER 28 U.S.C. § 1407 ........................................ 10

II.    THE TRANSFER MOTION FAILS TO ADDRESS ALTERNATIVES TO
     CENTRALIZATION ................................................................................. 12

     A.   COORDINATION BETWEEN THE PARTIES ON DISCOVERY AND
         SCHEDULING IS NOT ONLY  POSSIBLE, BUT ACTUALLY
         OCCURRING IN THE IDENTIFIED CASES ................................... 12

     B.   THE VIRGINIA PLAINTIFFS CANNOT SATISFY THEIR "HEAVY"
         BURDEN TO CONSOLIDATE THIS MINIMAL NUMBER OF
         ACTIONS ......................................................................................... 13

III.   THE SUBSTANTIAL LITIGATION PROGRESS MADE IN THE IDENTIFIED
     CASES UNDERCUTS ANY CONVENIENCE AND EFFICIENCY OF AN
     MDL....................................................................................................... 16

IV.   ALL OF THE DEFENDANTS OPPOSE CONSOLIDATION ..................................... 17

V.    THE PANEL RECENTLY DENIED CONSOLIDATION IN A VIRTUALLY
     IDENTICAL TRIBAL-LENDING MATTER ............................................... 18

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Athena Universal Life II Cost of Ins. Increase Litig.*,
268 F. Supp. 3d 1354 (J.P.M.L. 2017) ..................................................................................2

*Bancohio Corp. v. Fox*,
516 F.2d 29 (6th Cir. 1975) ........................................................................................2, 12

*In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*,
804 F. Supp. 2d 1376 (J.P.M.L. 2011) ................................................................................11

*In re Brandywine Communs. Techs., LLC*,
959 F. Supp. 2d 1377 (J.P.M.L. 2013) ................................................................................19

*Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*,
629 F.3d 1173 (10th Cir. 2010) ....................................................................................5, 8

*Brice, et al. v. Rees, et al*.,
No. 3:18-01200 (N.D. Cal*.)* ............................................................................................19

*Cumming v. Big Picture Loans, LLC, et al.*,
No. 5:18-cv-3476 (N.D. Cal.) ..................................................................................... *passim*

*Dahiya v. Talmidge Int'l, Ltd*.,
371 F.3d 207 (5th Cir. 2004) ............................................................................................11

*In re Dental Supplies & Equip. Antitrust Litig.*,
289 F. Supp. 3d 1330 (J.P.M.L. 2018) ................................................................................17

*In re Droplets, Inc., Patent Litig.*,
908 F. Supp. 2d 1377 (J.P.M.L 2012) ................................................................................18

*Duggan v. Big Picture Loans, LLC, et al.*,
No. 1:18-cv-12277 (D. Mass) ..................................................................................... *passim*

*In re Enhanced Recovery Co., LLC*,
278 F. Supp. 3d 1371 (J.P.M.L. 2017) ..........................................................................16, 18

*Galloway, et al. v. Big Picture Loans, LLC, et al.*,
No. 3:18cv406 (E.D. Va.) ..................................................................................... *passim*

*Galloway, et al. v. Martorello, et al.*,
No. 3:19cv314 (E.D. Va.) ..................................................................................... *passim*

*Galloway, et al. v. Williams, Jr., et al.*,
No. 3:19cv470 (E.D. Va.) ........................................................................ *passim*

*In re Genetic Techs. Ltd. '179 Patent Litig.*,
883 F. Supp. 2d 1337 (J.P.M.L. 2012).................................................. 11

*In re Gerber Probiotic Prods. Mktg.*,
899 F. Supp. 2d 1378 (J.P.M.L. 2012).................................................. 13

*Gibbs, et al., v. Plain Green, LLC, et al.*,
No. 3:17-00495 (E.D. Va.)...................................................................... 19

*Granger, et al., v. Great Plains Lending, LLC, et al.*,
No. 1:18-00112 (M.D. N.C.).................................................................. 19

*In re Great Plains Lending, LLC, Litig.*,
325 F. Supp. 3d 1379 (J.P.M.L. 2018).......................................3, 14, 19, 20

*In re H&R Block Employee Antitrust Litig.*,
355 F. Supp. 3d 1380 (J.P.M.L. 2019).................................................. 18

*In re HealthExtras Ins. Mktg. & Sales Practices Litig.*,
24 F. Supp. 3d 1376 (J.P.M.L. 2014).................................................... 16

*Hunt v. Calhoun County Bank, Inc.*,
8 F. Supp. 3d 720 (E.D. Va. 2014) ........................................................ i

*Jicarilla Apache Tribe v. Hodel*,
821 F.2d 537 (10th Cir. 1987) ............................................................... i

*Kobin v. Big Picture Loans, LLC*,
No. 2:19-cv-2842 (C.D. Cal.) ............................................................ *passim*

*Lac du Flambeau Band of Lake Superior Chippewa Indians v. Norton*,
327 F. Supp.2d 995 (W.D. Wis. 2004) .................................................. i

*In re Louisiana-Pacific Corp.*,
867 F. Supp. 2d 1346 (J.P.M.L. 2012).................................................. 17

*McClendon v. U.S.*,
885 F.2d 627 (9th Cir. 1989) ................................................................ i

*McCoy v. Big Picture Loans, LLC*,
No. 1:18-cv-3217 (N.D. Ga.) .............................................................. *passim*

*In re OSF Healthcare Sys. Employee Ret. Income Sec. Act (Erisa) Litig.*,
223 F. Supp. 3d 1343 (J.P.M.L. 2016).................................................. 14

*In re Petrobras Secs. Litig.*,
222 F. Supp. 3d 1345 (J.P.M.L. 2016) .................................................................15

*In re Photocopy Paper*,
305 F. Supp. 60 (J.P.M.L. 1969) .........................................................................11

*Rassi v. Fed. Program Integrators, LLC*,
69 F. Supp. 3d 288 (D. Me. 2014) .......................................................................11

*In re Scotch Whiskey*,
299 F. Supp. 543 (J.P.M.L. 1969) .......................................................................15

*In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig. II*,
953 F.2d 162 (4th Cir. 1992) ...............................................................................12

*In re Signal Int'l LLC Human Trafficking Litig.*,
38 F. Supp. 3d 1390 (J.P.M.L. 2014) ..................................................................13

*In re Silica Prod. Liab. Litig.*,
398 F. Supp. 2d 563 (S.D. Tex. 2005) .................................................................11

*In re Skinnygirl Margarita Bev. Mktg. & Sales Practices Litig.*,
829 F. Supp. 2d 1380 (J.P.M.L. 2011) ...........................................................16, 18

*Smith v. Big Picture Loans, LLC, et al.*,
No. 3:18-cv-1651 (D. Or.) ........................................................................... *passim*

*Souders v. S.C. Pub. Serv. Auth.*,
497 F.3d 1303 (Fed. Cir. 2007) ...........................................................................12

*In re Table Saw Prods. Liab. Litig.*,
641 F. Supp. 2d 1384 (J.P.M.L. 2009) .................................................................17

*Tomai–Minogue v. State Farm Mut. Auto. Ins. Co.*,
770 F.2d 1228 (4th Cir. 1985) ................................................................................ i

*U.S. v. Testan*,
424 U.S. 392 (1976) ................................................................................................ i

*In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health
Ins. Litig.*,
222 F. Supp. 3d 1339 (J.P.M.L. 2016) ...........................................................15, 16

*Vafokulova v. UA Int'l Consulting Corp.*,
No. CV 17-2605, 2017 WL 5557923 (E.D. Pa. Nov. 17, 2017)..........................11

*In re: Watson Fentanyl Patch Prods. Liab. Litig.*,
883 F. Supp. 2d 1350 (J.P.M.L. 2012) .................................................................18

*White v. Univ. of Cal.*,
765 F.3d 1010 (9th Cir. 2014) ...........................................................................5, 8

*Williams, et al. v. Big Picture Loans, LLC, et al.*,
No. 18-1827, 2019 U.S. App. LEXIS 19957 (4th Cir. July 3, 2019) ........................... *passim*

*Williams, et al. v. Big Picture Loans, LLC, et al.*,
No. 3:17cv461 (E.D. Va.) ................................................................................1

*In re Xytex Corp. Sperm Donor Prods. Liab. Litig.*,
223 F. Supp. 3d 1351 (J.P.M.L. 2016) .................................................................16

**Statutes**

18 U.S.C. § 1961 ............................................................................................4

28 U.S.C. § 1404 .......................................................................................2, 13

28 U.S.C. § 1407 .................................................................................. *passim*

Big Picture Loans, LLC ("Big Picture") and Ascension Technologies, LLC ("Ascension") (collectively, the "Tribal Defendants") submit this Joint Opposition to the Motion for Transfer of Actions to the Eastern District of Virginia and for Consolidation Pursuant to 28 U.S.C. § 1407 ("Transfer Motion"). The moving Plaintiffs (the "Virginia Plaintiffs")[2] seek consolidation of nine cases (the "Identified Cases") into a multi-district litigation proceeding ("MDL") despite all thirty-six defendants *opposing* consolidation.[3] The Tribal Defendants are named defendants in seven of the nine Identified Cases, but the Tribal Defendants' online-lending business is the catalyst underlying the allegations in all nine lawsuits.

The Tribal Defendants are sovereign arms of the Lac Vieux Desert Band of the Lake Superior Chippewa Indians ("the Tribe") and are immune from suit in each of the Identified Cases. The U.S. Court of Appeals for the Fourth Circuit so held in a July 3, 2019 published opinion in the *Williams* matter, reversing the district court and ordering the immediate dismissal of the Tribal Defendants. *See Williams v. Big Picture Loans, LLC*, No. 18-1827, 2019 U.S. App. LEXIS 19957, at *37 (4th Cir. July 3, 2019). (Tribal Defendants "are indeed arms of the Tribe, Big Picture and Ascension are entitled to tribal sovereign immunity") (attached hereto as **Exhibit 1**). The same result – sovereign immunity, resulting in dismissal of the Tribal Defendants – is expected in all of the Identified Cases, rendering consolidation improper.

"[A] transfer [under 28 U.S.C. § 1407] cannot be made unless the district court properly has jurisdiction of the subject matter of the case." *Bancohio Corp. v. Fox*, 516 F.2d 29, 32 (6th

---

[2] The Virginia Plaintiffs (represented by the same counsel) who filed the Transfer Motion are plaintiffs in four of the nine cases sought to be consolidated: *Williams, et al. v. Big Picture Loan, LLC*, No. 3:17cv461 (E.D. Va.) ("*Williams*"); *Galloway, et al. v. Big Picture Loans, LLC, et al.*, No. 3:18cv406 (E.D. Va.) ("*Galloway*"); *Galloway, et al. v. Martorello, et al.*, No. 3:19cv314 (E.D. Va.) ("*Galloway II*"); and *Galloway, et al. v. Williams, Jr., et al.*, No. 3:19cv470 (E.D. Va.) ("*Galloway III*"). The Virginia Plaintiffs include all of the named plaintiffs in *Williams* and *Galloway*, as well as a majority of the plaintiffs in *Galloway II* and *III*.

[3] These figures are based on pre-filing discussions between counsel for the respective parties and are provided based on the best present understanding of the Tribal Defendants.

Cir. 1975).  Thus, as a threshold matter, the Tribal Defendants' sovereign immunity precludes the transfer of at least seven of the Identified Cases under § 1407.  And, while it is clear the district court in *Williams* (and, by application of the Fourth Circuit's decision, in *Galloway*) has no jurisdiction over the Tribal Defendants, no other district court has found that jurisdiction exists either – rendering any transfer of those cases particularly erroneous.

"[C]entralization under Section 1407 should be the last solution after considered review of all other options," including "attempted information coordination" among the actions.  *In re Athena Universal Life II Cost of Ins. Increase Litig.*, 268 F. Supp. 3d 1354, 1355 (J.P.M.L. 2017). The Transfer Motion ignores the pursuit of alternatives to centralization.  Indeed, the Virginia Plaintiffs did not formally consolidate their own cases in Virginia and made no effort to pursue coordinated scheduling, document sharing, or transfer in the non-Virginia matters under 28 U.S.C. § 1404.  When, as here, the litigation involves a small number of cases and limited counsel, informal coordination is both practical and preferred to MDL consolidation.

MDL centralization also is improper because informal coordination of discovery and scheduling is not only possible, but has already occurred in the Identified Cases.  First, as four of the nine Identified Cases are brought by the same team of attorneys, they have already coordinated discovery and consolidated production.  For instance, all of the documents produced by the parties and third-parties, as well as all deposition transcripts, in *Williams* have been re-produced in *Galloway*.  Next, another team of attorneys represents the plaintiffs in four of the Identified Cases (*Smith, McKoy, Duggan*, *and Kobin*), and the parties have agreed to share all jurisdictional discovery materials produced in one (*Smith*) and coordinate efficient scheduling of motions practice.  Finally, in *Cumming*, the plaintiffs have received all of the third-party productions from *Williams*, and the vast majority of documents produced by the Tribal Defendants in *Williams*. Moreover, co-defendant Matt Martorello ("Martorello") has produced all materials he has supplied

in *Williams* in all of the other Identified Cases. Jurisdictional discovery is now complete in seven of the nine cases (*Smith*, *McKoy*, *Duggan*, *Kobin*, *Cumming*, *Williams*, and *Galloway*).

Finally, the Transfer Motion is belated. Seven of the Identified Cases have progressed significantly such that the core purposes of an MDL – efficiency, convenience, and judicial economy – would not be achieved because it is no longer necessary. The Fourth Circuit issued a case-dispositive ruling in *Williams*, dismissing the Tribal Defendants and confirming their status as sovereign arms of the Tribe. Jurisdictional discovery has closed in *seven* of the nine Identified Cases, described above, and briefing on the Tribal Defendants' immunity motions is currently ongoing or complete in each of those seven cases. The continuing passage of time – and ongoing litigation efforts in those cases – undercut any advantages of convenience or efficiency in an MDL.

In fact, just last year, the Panel denied MDL transfer in a similar tribal-lending dispute involving the same types of claims – where counsel for the Virginia Plaintiffs opposed consolidation on many of the same grounds argued by the Tribal Defendants now. *See In re Great Plains Lending, LLC, Litig.*, 325 F. Supp. 3d 1379, 1380 (J.P.M.L. 2018) ("*Great Plains*").

For all of these reasons, the Transfer Motion should be denied.

## RELEVANT BACKGROUND

## I.     *Virginia Cases*

### A.     *Williams*

Because all of the Identified Cases are substantively similar to *Williams*, and in many cases pled identically, an understanding of that case and the Fourth Circuit's recent decision (during the pendency of the Transfer Motion) finding the Tribal Defendants to be immune from suit due to their sovereign immunity, foretells the conclusion of all of the cases.

On June 22, 2017, Big Picture and Ascension, wholly-owned arms of the Tribe, were sued by five Virginia residents alleging federal Racketeer Influenced and Corrupt Organizations ("RICO") claims, 18 U.S.C. § 1961 et seq., based on the "collection of unlawful debt" arising from

alleged violations of Virginia usury law.  Before the Tribal Defendants were able to respond to the *Williams* complaint, the district court authorized plaintiffs' unrestrained discovery "respecting the Court's jurisdiction over Defendants," which allowed discovery beyond the paramount issue of whether tribal sovereign immunity barred the plaintiffs' claims.  (*Williams*, ECF No. 17.)  During the jurisdictional discovery period, the Tribal Defendants produced nearly 24,000 pages, supplied nearly 200 pages of written discovery responses, and submitted to multiple depositions.[4]

On September 29, 2017, the Tribal Defendants filed motions to dismiss.  Significant here was their motion that tribal sovereign immunity barred the court's subject matter jurisdiction.  (*Id.* at ECF No. 22.)  On June 25, 2018, the court denied the Tribal Defendants' immunity motions. (*Id.* at ECF Nos. 124, 146.)  On July 19, 2018, the Tribal Defendants timely appealed that decision to the Fourth Circuit.  (*Williams*, ECF No. 135.)

Despite the appeal, the *Williams* district court ordered proceedings to continue against Martorello.  The Virginia Plaintiffs and Martorello propounded dozens of subpoenas to nonparties, conducted dozens of depositions, litigated dozens of discovery disputes, and produced hundreds of thousands of documents, all of which have been shared in *Galloway*.

On July 3, 2019, the Fourth Circuit reversed and remanded the *Williams* decision and held the Tribal Defendants are immune from suit.  *See Williams*, 2019 U.S. App. LEXIS 19957, at *5, 14.  The Fourth Circuit began its comprehensive analysis by aligning with the Ninth Circuit's decision in *White v. Univ. of Cal.,* 765 F.3d 1010, 1026 (9th Cir. 2014) ("*White*") and "adopt[ing] the first five *Breakthrough*[5] factors to analyze arm-of-the-tribe sovereign immunity and allow the

---

[4] All of the documents produced by the defendants in *Williams*, including all third-party productions and deposition transcripts, were then shared with the plaintiffs in *Galloway*.

[5] *See Breakthrough Management Group, Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010) ("*Breakthrough*").  The "non-exhaustive [*Breakthrough*] factors are: (1) the method of the entities' creation; (2) their purpose; (3) their structure, ownership, and management; (4) the tribe's intent to share its sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) the policies underlying tribal sovereign immunity and the entities' 'connection to tribal economic development,

purpose of tribal immunity to inform our entire analysis." *Id.* at *13-14. The court applied each

factor to the district court's factual findings:

- **Factor 1: Method of Creation -** "Big Picture and Ascension were 'created under tribal law,' [not state law] which 'weighs in favor of the conclusion that these entities are entitled to tribal sovereign immunity.'" *Id.* at *14.

- **Factor 2: Purpose** – "[T]he Tribe created Big Picture and Ascension so that its lending operations could continue, along with the economic benefits associated with that continuation. . . . The district court therefore erred in finding this factor weighed against tribal sovereign immunity on this basis." *Id.* at 18-19. "Even more importantly, policy considerations of tribal self-governance and self-determination counsel against second-guessing a financial decision of the Tribe." *Id.* at *20.

- **Factor 3: Control** – "Given the evidence of the Tribe's broad power, through Hazen and [Tribal Chairman] Williams, over Big Picture's important business decisions and management and evidence that Hazen and Williams in fact exercised that power with frequency, the district court erred in concluding that Big Picture was not controlled by the Tribe simply because of Hazen and Williams's outsourcing of certain day-to-day management tasks and their lack of knowledge of some aspects of the lending operation." *Id.* at *31.

- **Factor 4: Tribal Intent** – "This factor focuses solely on whether the Tribe intended to provide its immunity to the [Tribal Defendants]. As Plaintiffs conceded, it did. This factor thus weighs in favor of immunity for both [of the Tribal Defendants]." *Id.* at *33.

- **Factor 5: Financial Relationship** – "[A] judgment against Big Picture or Ascension could in fact significantly impact the tribal treasury, which is at the heart of this analysis[.]" *Id.* at *35.

The Fourth Circuit thus concluded: "Because a proper weighing of the factors demonstrates

by a preponderance of the evidence that the [Tribal Defendants] are indeed arms of the Tribe, Big

Picture and Ascension are entitled to tribal sovereign immunity." The appellate court instructed

the district court in *Williams* to grant the Tribal Defendants' motions to dismiss and dismiss them

from the matter entirely. Plaintiffs did not file a petition for panel rehearing or rehearing en banc

with the Fourth Circuit by their July 17, 2019 deadline. The Fourth Circuit will issue its mandate

on or about July 24, 2019, thereby rendering the *Williams* judgment effective and requiring

---

and whether those policies are served by granting immunity to the economic entities.'" *Williams* 2019 U.S. App. LEXIS 19957, at *12-13 (citing *Breakthrough*, 629 F.3d at 1187).

dismissal of the Tribal Defendants. The parties are awaiting that mandate of dismissal.

The Fourth Circuit's decision should drive this Panel's consideration. *Williams* has progressed so far that no efficiencies or convenience can be gained from an MDL. And, in the Fourth Circuit, the Tribal Defendants are immune from suit. As each of the Identified Cases plead substantially the same allegations, it is *very* likely that the courts in California, Oregon, Massachusetts, and Georgia will respect the Fourth Circuit's application of the Tenth and Ninth Circuit's test when applied to the same defendants upon the same facts and similarly find immunity.

**B.** ***Galloway***

On June 12, 2018, just before the *Williams* district-level decision issued on immunity, the Tribal Defendants were sued again in *Galloway*, by the same plaintiffs' counsel as in *Williams*, with virtually the same factual allegations and causes of action as in *Williams*.[6] Just as in *Williams*, the Tribal Defendants filed motions to dismiss asserting their tribal sovereign immunity was a total bar to Plaintiffs' claims. As noted, per order of the *Galloway* court, all of the documents produced by the defendants in *Williams* have been shared in *Galloway*. (*See Galloway,* ECF No. 63 at p. 4.)

After the district court issued its *Williams* opinion denying immunity, the *Galloway* plaintiffs did not seek additional jurisdictional discovery, and the motions to dismiss were fully briefed by November 14, 2018. (*See Galloway*, ECF Nos. 80, 87, 88, 93, 94.) Yet, during a hearing on May 22, 2019, in anticipation of the Fourth Circuit's reversal after oral argument, the *Galloway* Plaintiffs argued that the Tribal Defendants made material "misrepresentations" to the Court and they were entitled to re-brief their opposition to dismissal based on evidence obtained from Martorello and third parties. (*Galloway*, ECF Nos. 246, 249.) Briefing is ongoing on that

---

[6] The only substantive difference between *Galloway* and *Williams* is that *Williams* is only on behalf of Virginia plaintiffs and *Galloway* is a multi-state action (including Virginia).

discrete issue and concludes August 9, 2019. On July 12, 2019, the district court in *Galloway* ordered an "evidentiary" hearing, and directed wholesale re-briefing of the sovereign immunity motions after the hearing. (*See Galloway*, ECF Nos. 261-262.)

Regardless, the Fourth Circuit's decision in *Williams* is binding precedent on the *Galloway* court and compels full dismissal of the Tribal Defendants. MDL centralization is inappropriate given this case progression and the pendency of dispositive motions on sovereign immunity.

### C.     *Galloway II & Galloway III*

Following the denial of the *Galloway* Plaintiffs' attempt to amend their complaint to add 19 new defendants, the *Galloway* plaintiffs filed *Galloway II* to preserve some additional claims. (*Galloway*, ECF Nos. 185, 228.) On June 26, 2019, counsel for the Virginia Plaintiffs filed a new complaint, *Galloway III*, seeking injunctive relief against all Tribal Council members. The Tribal Defendants are not named as defendants in *Galloway II* or *III*. No responsive pleadings have been filed in either case. Nor have the plaintiffs in *Galloway II* or *III* explicitly sought to incorporate or use the *Williams* discovery materials – although such discovery coordination is anticipated.

## II.     *Non-Virginia Cases*

### A.     *Cumming*[7]

On June 11, 2018, plaintiffs in *Cumming* sued the Tribal Defendants and Martorello, alleging the same facts and the same RICO violations predicated on similar state-usury claims on behalf of a putative nationwide class and various state-specific classes. On September 4, 2018, the Tribal Defendants filed motions to dismiss as to tribal sovereign immunity, lack of personal jurisdiction, and the doctrines of tribal exhaustion and *forum non conveniens*. The court allowed limited jurisdictional discovery premised on *White* and *Breakthrough*.

Jurisdictional discovery closed on June 14, 2019. The Tribal Defendants produced

---

[7] *Cumming v. Big Picture Loans, LLC, et al.*, No. 5:18-cv-3476 (N.D. Cal.) ("*Cumming*").

documents which overlapped substantially with their production in *Williams,* produced all third-party productions and deposition transcripts they possessed by virtue of being a defendant in *Williams*, and Martorello re-produced all of his documents from *Williams*.

Briefing on various case-dispositive issues, including the Tribal Defendants' sovereign immunity, is near conclusion. The *Cumming* Plaintiffs' responses to the Tribal Defendants' and Martorello's dispositive motions to dismiss are due on July 22, 2019, and replies are due on August 12, 2019. The court will hear oral argument on all pending motions on October 17, 2019. Litigation has progressed to a point in *Cumming* such that no efficiencies would be gained from an MDL, and transfer in fact could slow down and complicate the case.

**B.     *Smith, McKoy, Duggan, and Kobin*[8]**

*McKoy*, *Smith*, *Duggan*, and *Kobin* are substantively identical in all regards, with one exception in *Duggan*, explained below.

- The *McKoy* complaint was filed on July 3, 2018 on behalf of a putative state-specific class of Georgia residents who took out loans with Big Picture and claim various violations of Georgia lending laws.

- The *Smith* complaint was filed on September 11, 2018 on behalf of a putative state-specific class of Oregon residents who took out loans with Big Picture and claim various violations of Oregon lending laws.

- The *Duggan* complaint was filed on October 31, 2018 on behalf of a putative state-specific class of Massachusetts residents who took out loans with Big Picture and claim various violations of Massachusetts lending laws. Leave to amend was granted on July 11, 2019. (*Duggan*, ECF No. 69.)

- The *Kobin* complaint was filed on April 12, 2019 alleging a putative nationwide RICO class, as well as state-usury claims by a subclass of California residents.

While *McKoy* was chronologically first, *Smith* has progressed the fastest and the farthest. Thus, an understanding of *Smith* also explains the progress of *McKoy*, *Duggan*, and *Kobin*. The

---

[8] *Smith v. Big Picture Loans, LLC*, No. 3:18-cv-1651 (D. Or.) (*"Smith"*); *McCoy v. Big Picture Loans, LLC*, No. 1:18-cv-3217 (N.D. Ga.) ("*McKoy*"); *Duggan v. Big Picture Loans, LLC*, No. 1:18-cv-12277 (D. Mass) ("*Duggan*"); and *Kobin v. Big Picture Loans, LLC*, No. 2:19-cv-2842 (C.D. Cal.) ("*Kobin*").

same counsel represents the plaintiffs in *McKoy*, *Smith*, *Duggan*, and *Kobin*.

The Tribal Defendants and the *Smith/McKoy/Duggan/Kobin* Plaintiffs have engaged in substantial informal coordination of discovery, scheduling, and motions practice. Indeed, the parties have agreed to share all discovery productions and deposition transcripts among the four cases – most of which was originally produced in the *Smith* matter. Jurisdictional discovery as to the Tribal Defendants' claims of sovereign immunity closed on July 3, 2019. During that discovery period, counsel in *Smith/McKoy/Duggan/Kobin* requested and received a substantial document production, and the plaintiffs took four depositions in *Smith*, all of which were shared among the four cases. Martorello has re-produced in *Smith/McKoy/Duggan/Kobin* all materials he has produced in *Williams*, *Galloway*, and *Cumming*.

While the Tribal Defendants' dispositive motions proceed to hearings in these cases, the parties have agreed that the matters should be stayed as to Martorello.[9]

*Duggan* and *Kobin* slightly differ from the other cases in this quartet. As to *Duggan*, on July 11, 2019, the district court granted plaintiff's motion for leave to amend her complaint to include thirteen new defendants, including the entire Lac Vieux Desert Band of Lake Superior Chippewa Indians Tribal Council ("Tribal Council"). (*Duggan*, ECF No. 69.) These individual defendants "are solely named in their official capacities as co-managers, chief executive officers, and tribal council members" as plaintiff seeks injunctive and declaratory relief related to the loans and lending practices at issue. (As noted above, plaintiffs in *Galloway III* mimicked this action for an injunction a day later.) (*See Duggan*, ECF No. 72 at ¶ 6.)

As to *Kobin*, it is in early stages, and the Tribal Defendants' sovereign immunity motions are due August 26, 2019. (*Kobin*, ECF No. 23.)

---

[9] *See Duggan*, ECF No. 62 and *Smith*, ECF No. 80. Counsel have agreed informally in *McKoy* and *Kobin*.

## LEGAL STANDARD

Consolidation may be ordered pursuant to 28 U.S.C. § 1407 where multiple actions pending in different districts involve "common questions of fact and transfer would promote efficiency and serve the convenience of the parties and witnesses." 28 U.S.C. § 1407. At a minimum, to warrant transfer, sufficiently complex factual questions must predominate over unique and non-complex questions; however, "transfer will not be ordered unless the convenience of parties and witnesses is served and the just and efficiency conduct of the actions [is] promoted by such a transfer." *In re Photocopy Paper*, 305 F. Supp. 60, 61 (J.P.M.L. 1969). Fundamentally, MDL consolidation should be the "last solution after considered review of all other options." *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.*, 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011). The Virginia Plaintiffs have failed to meet these standards.

## ARGUMENT

**I.    Tribal sovereign immunity and the pendency of related jurisdictional motions precludes the transfer of the Identified Cases under 28 U.S.C. § 1407.**

The Tribal Defendants are immune from suit as sovereign arms of the Tribe, thus the courts in each of the Identified Cases where they are named lack subject matter jurisdiction over them. This precludes transfer under § 1407.

"Tribal sovereign immunity is jurisdictional in nature therefore it must be addressed at the outset of a case." *Rassi v. Fed. Program Integrators, LLC*, 69 F. Supp. 3d 288, 290–91 (D. Me. 2014); *In re Silica Prod. Liab. Litig.*, 398 F. Supp. 2d 563, 644 (S.D. Tex. 2005) (A federal court's "first inquiry" must be whether it has subject matter jurisdiction.). "Unless a federal court possesses subject matter jurisdiction over a dispute, . . . any order it makes (other than an order of dismissal or remand) is void." *Dahiya v. Talmidge Int'l, Ltd*., 371 F.3d 207, 210 (5th Cir. 2004). Should the district courts in California (*Cumming* and *Kobin*), Oregon (*Smith*), Massachusetts (*Duggan*), and Georgia (*McKoy*) agree with the Fourth Circuit's application of the Ninth and Tenth

10

Circuit's tribal-immunity analyses, they would similarly dismiss those Identified Cases as to the Tribal Defendants. Without jurisdiction, no transfer would be permitted. *See Vafokulova v. UA Int'l Consulting Corp.,* No. CV 17-2605, 2017 WL 5557923, at *1 (E.D. Pa. Nov. 17, 2017) ("It is axiomatic that a court without subject matter jurisdiction must dismiss the case.").[10]

Even more, jurisdiction is required in both the transferor and transferee courts as "a transfer [under § 1407] cannot be made [to the Panel] unless the district court properly has jurisdiction of the subject matter of the case." *Fox*, 516 F.2d at 32. And the transferee MDL court only has the jurisdiction of the originating, transferor courts. *See Souders v. S.C. Pub. Serv. Auth.*, 497 F.3d 1303, 1307 (Fed. Cir. 2007) ("It is well settled that transfer of a case to another court is only permissible if the destination court has subject matter jurisdiction to hear the case."). Said differently, "the authority for consolidating cases on the order of the judicial panel on multi-district litigation, however, is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." *In re Showa Denko K.K. L-Tryptophan Prod. Liab. Litig. II*, 953 F.2d 162, 165–66 (4th Cir. 1992). The only Identified Case to evaluate tribal immunity (*Williams*) has found no jurisdiction exists. As the cases must ultimately be transferred back to their original jurisdictions, the Virginia Plaintiffs cannot ask this Panel to bypass the district courts' evaluation of their jurisdiction now.

Based on the decision of the Fourth Circuit in *Williams*, the Virginia Plaintiffs cannot show that there is jurisdiction for the Eastern District of Virginia to transfer their cases nor that this panel has jurisdiction to receive them. And while not binding on the district courts in California, Massachusetts, Oregon, and Georgia, the Fourth Circuit's *Williams* opinion is certainly persuasive

---

[10] The Panel has held the existence of these types of "idiosyncratic" issues or dipositive questions of law (*i.e.*, tribal sovereign immunity) for a subset of defendants weighs against centralization. *See, e.g., In re Genetic Techs. Ltd. '179 Patent Litig.*, 883 F. Supp. 2d 1337, 1338 (J.P.M.L. 2012) ("Also weighing in favor of denying centralization is that certain defendants have idiosyncratic potentially dispositive defenses that will implicate significant unique facts.").

authority that should be given deference until another court holds otherwise. Quite simply, immunity bars jurisdiction, which bars centralization.[11]

## II. The Transfer Motion fails to address alternatives to centralization.

### A. Coordination between the parties on discovery and scheduling is not only possible, but actually occurring in the Identified Cases.

Centralization under § 1407 is not necessary or preferred when informal cooperation between the parties is possible and occurring, as it is here. The Virginia Plaintiffs' failure to address this threshold point is fatal to their Transfer Motion.[12]

The Panel instructed that, "[i]n their briefs, the parties should address what steps they have taken to pursue alternatives to centralization (including, but not limited to, engaging in informal coordination of discovery and scheduling, and seeking Section 1404 transfer of one or more of the Identified Cases)." (MDL No. 2906, ECF No. 3.) Alternative means to achieve convenience, efficiency, and judicial economy are available and have actually been employed by the parties in the Identified Cases. *See In re Gerber Probiotic Prods. Mktg.*, 899 F. Supp. 2d 1378 (J.P.M.L. 2012) (denying motion to consolidate due to viable alternatives, including coordination). The Transfer Motion simply bypasses the Panel's Order and should be denied on that basis alone.

Plaintiffs' failure aside, this issue weighs squarely against MDL consolidation. It is well established that "[i]nformal cooperation among the involved attorneys and coordination between the involved courts" is "preferable" to MDL consolidation. *In re Signal Int'l LLC Human Trafficking Litig.*, 38 F. Supp. 3d 1390, 1391 (J.P.M.L. 2014). Here, with the exception of *Galloway II* and *III*, which have not yet progressed beyond the filing of the Complaint, all Plaintiffs

---

[11] Based on the Tribal Defendants' research, no MDL has ever adjudicated whether tribal sovereign immunity serves as a bar to centralization. It also does not appear to the Tribal Defendants that any MDL has ever adjudicated immunity applicable to federal instrumentalities or Eleventh Amendment immunities applicable to state instrumentalities.

[12] Last year, counsel for the Virginia Plaintiffs challenged the same failure to request informal coordination of discovery or pursue other alternatives to centralization in the *Great Plains* proposed MDL. *Great Plains*, MDL No. 2851, ECF No. 12 at pp. 2-3, 11-12.

in all of the Identified Cases have already received the vast majority of documents produced in *Williams*. And in *McKoy*, *Smith*, *Duggan*, and *Kobin*, where plaintiffs conducted their own jurisdictional discovery, the parties agreed to coordinate document sharing, scheduling, and motions practice among those cases. (*See, e.g., Smith*, ECF No. 79; *Kobin*, ECF No. 21; *Duggan*, ECF No. 61.)

The Virginia Plaintiffs fail to mention those efforts. Rather, they claim in conclusory fashion that "Defendants" have been "obstructionist" during discovery – with the incorrect presumption that document sharing has been thwarted.[13] The Virginia Plaintiffs' use of the "obstructionist" moniker in group fashion as to all thirty-six "Defendants" demonstrates how little value that argument holds. Even though, as the Fourth Circuit held, the Tribal Defendants are immune from suit as arms of the Tribe, they have still provided hundreds of thousands of pages of documents to the plaintiffs in the Identified Cases related to jurisdictional discovery.

And, Plaintiffs' "obstructionist" claim is not only false but irrelevant to the § 1407 inquiry. The Virginia Plaintiffs have made no effort to explore informal document sharing or coordinated scheduling with the other two sets of Plaintiffs' counsel. That is the Panel's instruction and relevant inquiring under § 1407.

In sum, coordination between the parties in the Identified Cases is both possible and actually occurring, which trumps any benefits of centralization to an MDL.

**B.    The Virginia Plaintiffs cannot satisfy their "heavy" burden to consolidate this minimal number of actions.**

"[W]here only a minimal number of actions are involved, the moving party generally bears a heavier burden of demonstrating the need for centralization." *Great Plains*, 325 F. Supp. 3d at

---

[13] Admittedly, the Tribal Defendants resisted all of the Virginia Plaintiffs' discovery efforts while their appeal was pending, as the district court was divested of jurisdiction over them. That is not "obstructionist," as the Virginia Plaintiffs had no right to conduct discovery pending the appeal.

1380. This numerosity factor exists because informal coordination is strongly preferred to centralization when, as here, the litigation involves a small number of cases. *In re OSF Healthcare Sys. Employee Ret. Income Sec. Act (Erisa) Litig.,* 223 F. Supp. 3d 1343, 1345 (J.P.M.L. 2016) (denying transfer of two actions with overlapping classes).

This heightened burden requires the moving party "to show that the common questions of fact are so complex and the accompanying common discovery so time consuming as to overcome the inconvenience to the party whose action is being transferred and its witnesses." *In re Scotch Whiskey,* 299 F. Supp. 543, 544 (J.P.M.L. 1969). This is true even in the context of overlapping class actions. *See, e.g., Dometic Corp. Gas Absorption Refrigerator Prod. Liab. Litig.,* 285 F. Supp. 3d at 1359 (refusing to consolidate three actions with overlapping nationwide and statewide classes); *In re United Healthcare Servs., Inc. Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.,* 222 F. Supp. 3d 1339, 1340-41 (J.P.M.L. 2016) (declining to transfer three actions with overlapping putative classes). The Virginia Plaintiffs cannot meet their heavy burden for numerosity on multiple grounds.[14]

First, the Transfer Motion glosses over this numerosity element by concluding in two sentences that eight cases are "sufficient" to warrant consolidation. (ECF No. 1-1 at p. 12.) That conclusion ignores the nuance of this issue and is incorrect on multiple grounds. First, while the Virginia Plaintiff's Schedule of Actions includes eight actions for proposed consolidation, four of those eight (now nine) cases are pending before the same judge in the same Virginia district (*Williams* and *Galloway I, II, and III*). In counting actions for potential consolidation, the Panel considers cases pending before the same judge in the same district as one action. *See In re Petrobras Secs. Litig.*, 222 F. Supp. 3d 1345, 1346 (J.P.M.L. 2016) ("Effectively, there are only

---

[14] In *Great Plains*, counsel for the Virginia Plaintiffs argued that three tribal-lending actions were insufficient from a numerosity perspective to warrant centralization. *Great Plains*, MDL No. 2851, ECF No. 12 at pp. 11-12.

two actions here – the Coordinated Actions in the Southern District of New York and the individual action pending in the Eastern District of Pennsylvania.").

Effectively, because these cases are largely attorney-driven, the Identified Cases fit into three groups: (1) *Williams*, *Galloway*, *Galloway II*, and *Galloway III*; (2) *Cumming*; and (3) *McKoy*, *Smith*, *Duggan*, and *Kobin*. As these cases are being managed, they cannot be considered as nine individual cases. This does not meet any numerosity threshold. *See, e.g., In re Xytex Corp. Sperm Donor Prods. Liab. Litig.*, 223 F. Supp. 3d 1351, 1352 (J.P.M.L. 2016) (denying centralization because, in part, "there are only six actions pending in this litigation (two of which are pending in the same district before the same judge and were filed by the same counsel)."); *In re Skinnygirl Margarita Bev. Mktg. & Sales Practices Litig.*, 829 F. Supp. 2d 1380, 1380 (J.P.M.L. 2011); *In re HealthExtras Ins. Mktg. & Sales Practices Litig.*, 24 F. Supp. 3d 1376, 1376 (J.P.M.L. 2014).

Second the Identified Cases also involve only three sets of Plaintiffs' counsel, which further counsels in favor of informal coordination and against centralization. *See In re United Healthcare Servs., Inc., Harvoni (Ledipasvir & Sofosbuvir) Health Ins. Litig.*, 222 F. Supp. 3d 1339, 1341 (J.P.M.L. 2016) ("Given the few involved counsel, the limited number of actions, and the presence of significant non-overlapping issues in one action, informal coordination of discovery and pretrial motions is practicable and preferable to centralization."). The Virginia Plaintiffs' claim that "five different law firms" are involved in the "copycat cases" is thus a red herring. (ECF No. 1-1 at p. 5.)

Given the "minimal" number of actions and counsel truly involved, the Virginia Plaintiffs cannot satisfy their heavy burden to show why consolidation would be preferable to informal coordination of discovery and pretrial motions.

**III.    The substantial litigation progress made in the Identified Cases undercuts any convenience and efficiency of an MDL**.

The MDL's core purposes of convenience and efficiency are not achieved where, as here, discovery and motions practice in the constituent cases has progressed significantly – including to a dispositive decision in the Tribal Defendants' favor in *Williams*.  *See, e.g., In re Enhanced Recovery Co., LLC*, 278 F. Supp. 3d 1371, 1372 (J.P.M.L. 2017) ("The procedural posture of the actions counsels against centralization.  Fact discovery in several actions is scheduled to be completed within six months.  Centralization at this juncture appears unlikely to produce significant efficiencies and may delay resolution of these actions."); *In re Louisiana-Pacific Corp.*, 867 F. Supp. 2d 1346 (J.P.M.L. 2012) ("Where there is such a significant procedural disparity among the subject actions, the Panel will take a close look at whether movants have met their burden of demonstrating that centralization will still serve the purposes of Section 1407.").

Here, jurisdictional discovery in *Williams* has been closed for over 18 months.  Discovery has continued against the other *Williams* Defendants, but is nearly concluded.[15]

Aside from *Williams*, six of the remaining cases (*Galloway*, *Cumming*, *McKoy*, *Smith*, *Duggan*, and *Kobin*) have advanced to a dispositive-motions phase.  *See In re Dental Supplies & Equip. Antitrust Litig.*, 289 F. Supp. 3d 1330, 1330 (J.P.M.L. 2018) ("The procedural posture of these actions, though, weighs heavily against centralization. The Texas action – the only action proposed for transfer – has proceeded at an expeditious pace. *Discovery is complete, dispositive motions are pending*, and trial is set to begin on May 14, 2018.") (emphasis added).  Indeed, in five of these six, the Tribal Defendants are awaiting plaintiffs' responses, all of which will likely be filed within the next eight weeks.

The significant progression of six cases, including as compared to the remaining two

---

[15] Counsel for the Virginia Plaintiffs argued in *Great Plains* that the extensive discovery completed in one of the cases foreclosed MDL centralization.  *See Great Plains*, MDL No. 2851, ECF No. 12 at pp. 3, 17.

(*Galloway II* and *III*), is stark and "weighs heavily against centralization" given the lack of convenience and efficiencies otherwise achieved with a parallel and consistent discovery process. *In re Dental Supplies*, 289 F. Supp. 3d at 1330; *see In re Table Saw Prods. Liab. Litig.*, 641 F. Supp. 2d 1384, 1384-85 (J.P.M.L. 2009) (emphasizing, in denying centralization, that "[a] significant number of the actions [were] substantially advanced" and "[o]ther actions were only recently commenced"). Said differently, only two of the Identified Cases are in their infancy, and in fact, *Williams* is so far advanced that the court now lacks jurisdiction over the Tribal Defendants. *See In re Droplets, Inc., Patent Litig.*, 908 F. Supp. 2d 1377, 1378 (J.P.M.L 2012) ("Another consideration underlying our decision to deny centralization is that, contrary to Droplets' contention, not all actions are in their "infancy.").

"Centralization at this juncture appears unlikely to produce significant efficiencies and may delay resolution of [the Identified Cases]." *In re Enhanced Recovery Co., LLC*, 278 F. Supp. 3d 1371, 1372-73 (J.P.M.L. 2017).

## IV.  All of the defendants oppose consolidation.

Upon belief, all of the defendants in the Identified Cases oppose the Transfer Motion, which militates against MDL consolidation. The Panel has made clear that the fact "all defendants uniformly oppose centralization is a factor which is quite influential where other factors do not strongly favor centralization." *In re Skinnygirl Margarita Bev. Mktg. & Sales Practices Litig.*, 829 F. Supp. 2d 1380 (J.P.M.L. 2011). That is exactly the circumstance here – where, as described, the relevant factors of numerosity, complexity, viable alternatives to centralization, and litigation progression all counsel against an MDL.

The Panel "look[s] to the overall convenience of the parties and witnesses, not just those of a single plaintiff [*i.e.*, the Virginia Plaintiffs] or defendant in isolation." *See In re: Watson Fentanyl Patch Prods. Liab. Litig.*, 883 F. Supp. 2d 1350, 1351-52 (J.P.M.L. 2012). Thus, an

MDL transfer is inappropriate where "the party most likely to face duplicative discovery . . . opposes centralization." *In re H&R Block Employee Antitrust Litig.*, 355 F. Supp. 3d 1380 (J.P.M.L. 2019). Here, that is the Tribal Defendants, who have been forced to spend millions of dollars defending asymmetrical and duplicative discovery in the Identified Cases – only to have their sovereign immunity confirmed by the Fourth Circuit.

Likewise, "where a Section 1407 motion appears intended to further the interests of particular counsel more than those of the statute, [the Panel] would certainly find less favor with it." *In re Brandywine Communs. Techs., LLC*, 959 F. Supp. 2d 1377, 1379 (J.P.M.L. 2013). The Virginia Plaintiffs have ignored alternatives to MDL consolidation and instead seek to centralize the cases in their home court with a district judge who has already (a) incorrectly held that the Tribal Defendants lack immunity [*Williams*, Nos. 124, 125], and (b) ruled that another *Williams* Defendant has categorically waived his attorney-client privilege [*Williams*, ECF Nos. 248-249].[16] The Panel has previously denied centralization in analogous situations where movants seek to "lock in" favorable rulings. *See In re Brandywine*, 959 F. Supp. 2d at 1379. The widespread opposition by all defendants to the Transfer Motion further confirms the inappropriateness of MDL consolidation.

## V.     The Panel recently denied consolidation in a virtually identical tribal-lending matter.

The Panel recently denied transfer and consolidation in a parallel tribal-lending matter decided last year. *See Great Plains*, 325 F. Supp. 3d at 1380. In fact, counsel for the Virginia Plaintiffs <u>opposed</u> MDL consolidation in *Great Plains*, where one of the *tribal defendants* – not the plaintiffs – sought transfer and centralization of the claims in three actions to manage jurisdictional discovery.[17]

---

[16] Presumably, the Virginia Plaintiffs would not agree that their claims against the Trial Defendants are barred by the Fourth Circuit's ruling in *Williams*.

[17] The three cases, *Brice, et al. v. Rees, et al.*, No. 3:18-01200 (N.D. Cal*.), Granger, et al., v. Great Plains Lending, LLC, et al.*, No. 1:18-00112 (M.D. N.C.), and *Gibbs, et al., v. Plain Green, LLC, et al.*, No. 3:17-

The *Great Plains* plaintiffs' counsel – the same counsel as for the Virginia Plaintiffs here – challenged Great Plains' failure to request informal coordination of discovery or pursue other alternatives to centralization. *See Great Plains*, MDL No. 2851, ECF No. 12 at pp. 2-3, 11-12, attached hereto as **Exhibit 2**. Second, they stated that "the central allegation – that the loans violated each state's usury law – is not complex or fact intensive," thereby warranting denial of transfer. *Id.* at pp. 3, 17. Third, they argued that three actions were insufficient from a numerosity perspective to warrant centralization. *Id.* at pp. 11-12. And, fourth, they claimed that the extensive discovery completed already in one of the cases, including the production of more than 700,000 documents, would "streamline the discovery and pretrial process" for other defendants and cases *outside of the MDL mechanism*. *Id.* at pp. 3, 17. Without any principled basis to do so, the same counsel for the Virginia Plaintiffs have taken virtually the opposite positions in this MDL request.

The Panel ultimately denied the request for MDL transfer on multiple grounds. According to the Panel, "the common factual issues presented by these actions [were] not particularly numerous or complex." *Great Plains*, 325 F. Supp. 3d at 1380. And, there were "only three actions before the Panel, and plaintiffs in two of these actions are represented by the same counsel." *Id.* In those circumstances, "alternatives to centralization, such as informal cooperation among the relatively few involved attorneys and coordination among the involved courts, are eminently feasible and will be sufficient to minimize any potential for duplicative discovery or inconsistent pretrial rulings." *Id.* at 1380-81. The same result should occur here.

---

00495 (E.D. Va.), alleged the same factual predicate and claims here – that Great Plains violated various state usury laws via an illegal tribal lending scheme.

## <u>CONCLUSION</u>

For the foregoing reasons, Big Picture Loans, LLC and Ascension Technologies, LLC respectfully request that the Panel deny the Virginia Plaintiffs' Motion for Transfer of Actions to the Eastern District of Virginia and For Consolidation Pursuant to 28 U.S.C. § 1407.

**BIG PICTURE LOANS, LLC; ASCENSION TECHNOLOGIES, LLC**

By: ___*/s/ David N. Anthony*___
David N. Anthony
Virginia State Bar No. 31696
Timothy J. St. George
Virginia State Bar No. 77349
*Counsel for Big Picture Loans, LLC and Ascension Technologies, LLC*
TROUTMAN SANDERS LLP
1001 Haxall Point
Richmond, Virginia 23219
Telephone: (804) 697-1254
Facsimile: (804) 698-6013
Email: david.anthony@troutman.com
Email: timothy.st.george@troutman.com

Justin A. Gray
*Counsel for Big Picture Loans, LLC and Ascension Technologies, LLC*
ROSETTE, LLP
25344 Red Arrow Highway
Mattawan, MI 49071
Telephone: (269) 283-5005
Facsimile: (517) 913-6443
Email: jgray@rosettelaw.com

39204780

20